**FILED**
**CLERK**
10/30/2014
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    ESTATE OF DANIEL McDONNELL, et al., :
                                        :  11-CV-4221 (WFK)
5                     Plaintiffs,       :
                                        :
6              v.                       :
                                        :  100 Federal Plaza
7    COUNTY OF SUFFOLK, et al.,         :  Central Islip, New York
                                        :
8                                       :  October 1, 2014
                     Defendants.        :
9    ------------------------------------X

10

11          TRANSCRIPT OF CIVIL CAUSE FOR FAIRNESS HEARING
               BEFORE THE HONORABLE GARY R. BROWN
                 UNITED STATES MAGISTRATE JUDGE
12

13   APPEARANCES:

14

15   For the Plaintiffs:        STEPHEN CIVARDI, ESQ.
                                RICHARD OBIOL, ESQ.
16                              Law Offices of Civardi & Obiol, PC
                                23 South Main Street, Suite 30
                                Freeport, New York 11520
17

18

19   For the Defendants:        BRIAN C. MITCHELL, ESQ.
                                LYNN BIZZARRO, ESQ.
20                              Suffolk County Dept. of Law
                                100 Veterans Memorial Highway
21                              Hauppauge, New York 11788

22

23   Court Transcriber:         SHARI RIEMER, CET-805
                                Typewrite Word Processing Service
                                211 N. Milton Road
24                              Saratoga Springs, New York  12866

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service

1  (Proceedings began at 2:19 p.m.)

2          THE CLERK: Calling 11-CV-4221, <u>Estate of Daniel</u>

3  <u>McDonnell, et al. v. County of Suffolk, et al.</u>

4          State your appearances for the record.

5          MR. CIVARDI:  Steve Civardi for plaintiffs.

6          MR. OBIOL:  Rich Obiol for plaintiffs.

7          MS. BIZZARRO:  Lynn Bizzarro, County of Suffolk and

8  defendants.

9          MR. MITCHELL:  For the Suffolk County defendants,

10  Brian C. Mitchell, Assistant County Attorney.  Good afternoon,

11  Your Honor.

12          THE COURT: Good afternoon.  We are here for

13  essentially a fairness hearing on an infant petition relating

14  to this matter.  Counsel, why don't you take the lead?  I've

15  looked at the papers.  They're in very good shape.  Is there

16  anything you want to add, anything you want to talk about?

17          MR. CIVARDI: No, Judge, we can rely on the papers.

18  We have our clients here with us in the courtroom.

19          THE COURT: Okay.  I've read Mrs. McDonnell's

20  affidavit.  Do you want to put her on the stand too or do you

21  want to just leave it with the affidavit?

22          MR. CIVARDI: It's not necessary, Judge.  The

23  affidavit was reviewed in detail with her.  She's present in

24  the courtroom with her son and she's approved all of the

25  disbursements in the case as well.

1       THE COURT: Again, I will say that the papers are in
2   very good form and I appreciate that because I've gotten some
3   of these applications that weren't so well done.

4       MR. CIVARDI: Thank you, Judge.

5       THE COURT: Thank you for that.

6       Does the County want to add anything?

7       MR. MITCHELL: No, Your Honor.  Thank you.

8       THE COURT: All right.  I have one question -- well,
9   I have a couple of questions.  Part of the assessment here
10  would be obviously sort of assessing the risks and -- the risk
11  going forward as well as kind of making sure that the amount
12  is fair.  Now, I'll note that the amount is obviously very --
13  a fairly large number but nevertheless I think I have to make
14  some assessment around the number.

15      We had -- we attempted some sort of settlement
16  mediation here if I remember. Is that correct?

17      MR. CIVARDI: Yes.

18      THE COURT: Did we get to a point where either offers
19  or demands were made or I made a suggestion or did we not
20  actually get that far?

21      MR. CIVARDI: Judge, we exchanged letters in camera
22  with you with our settlement positions and there was
23  discussion but there were never settlement offers made by the
24  County.

25      THE COURT: And I never made a suggestion; right?

1          MR. CIVARDI: Not formally, no.

2          THE COURT: My best recollection is that whatever I

3     was sort of thinking of at that time, and of course much

4     earlier in the case.  We didn't know as much as you obviously

5     would have learned later but I think the numbers I was

6     thinking about were more modest than the ultimate settlement

7     which I sense given that more information was developed.  So

8     my inclination is to think that the settlement amount is fine,

9     more appropriate.

10          I will say that the disbursement number caused me to

11     initially raise an eyebrow but then when I realized you're

12     actually in the midst of trial when you settled this and then

13     I looked at the sheet it all seems -- the numbers all seem to

14     be correct.

15          Did the County submit anything on this, by the way?

16          MR. MITCHELL: No, Your Honor.

17          THE COURT: I just assume you join the application.

18     Is that fair?

19          MR. MITCHELL: Yes, Judge.  We have had conversations

20     with the plaintiffs about varying issues.  We resolved them

21     all in a way that we don't believe that we need to submit

22     anything to the court.

23          THE COURT: And you already have the legislative

24     approval; is that correct?

25          MR. MITCHELL: That -- yes, that's already been done,

1  Your Honor.

2  THE COURT: Good.  One more thing back to the

3  plaintiffs for a moment.  I note that you were in -- several

4  days into trial when you reached this resolution.  Can you

5  just give me a sense of how far the trial got?  What did you

6  do?  What happened at trial?

7  MR. CIVARDI: Judge, we did jury selection.  We had

8  opening statements.  We completed the testimony of first named

9  defendant and we were beginning the testimony of the second

10  defendant and the County intensified their settlement

11  discussions.  A number was reached which was approved by Judge

12  Kuntz and then sealed pending further action of the court.

13  THE COURT: All right.  My intention then is to write

14  a report and recommendation to Judge Kuntz based on the

15  papers.  I will tell you -- again, my initial inclination here

16  is that this is -- it all appears in order.  I do have to just

17  go back and check the statute and make sure we've checked all

18  the boxes.  If I need anything else I will let you know.  I

19  even double checked some of the math which is very hard for

20  those of us without mathematical training and everything

21  seemed to work out.

22  Counsel, I'll just offer you one more chance.  Since

23  your client is here, do you want her just to acknowledge on

24  the record that she's in accord with this?

25  MR. CIVARDI: Sure.  The record could reflect that

1   Daniel McDonnell is present in the courtroom with her son

2   Devon McDonnell and she joins in the application and has

3   approved the application.

4         THE COURT: Mr. Mitchell, do you want anything

5   further on that?

6         MR. MITCHELL: No, Judge, not on that.

7         THE COURT: Okay.

8         MR. MITCHELL: Just procedurally I know that Your

9   Honor made inquiry whether the legislature had approved the

10  settlement which they have --

11        THE COURT: Right.

12        MR. MITCHELL:  -- and the next step after your

13  report and recommendation and after Judge Kuntz approves that

14  will be to file what's called a 6N order, and that's an order

15  that wherein Judge Kuntz will approve the settlement.  6N is a

16  state requirement that's necessary.

17                    [Pause in proceedings.]

18        MR. MITCHELL: My co-counsel and superior has

19  indicated that she's not so sure that it's necessary.  Usually

20  we do but if it's determined that it is it's a form order that

21  we submit to -- it would be submitted to the District Judge

22  and it essentially just lays out -- it attaches the release

23  document.  It attaches the document from the legislature, the

24  letter indicating that it's been approved.

25        THE COURT: Would it be helpful and efficient for you

1  to submit that to me and I'll make it part of the report and
2  recommendation to Judge Kuntz?

3          MR. MITCHELL: It would be, Judge.  I'm just trying
4  to think if -- from the procedural standpoint if we do it now
5  if it's something that -- I'm just thinking through my head.
6  We usually do it after a release has been signed.  After
7  that's all been done then we submit to the court those things.
8  I don't object to submitting it all to Your Honor.  I'm
9  thinking out loud.

10         THE COURT: I'm saying it might save time.  I mean if
11 you want to send it to me I'm happy to take a look at it and
12 if it looks all in order I can make it part of the report and
13 recommendation that Judge Kuntz not only approve the
14 settlement but also execute the 5N -- I'm sorry, 6N order.

15         MR. MITCHELL: 6N.

16         THE COURT: You can see my vast experience with it.
17 I just got the number wrong.

18         MR. MITCHELL: Judge, I'll just take a look at it in
19 the peace and quiet of my office if there is such a thing to
20 see if -- whatever the process is and certainly if it's
21 something we could submit to you and make it part of the
22 recommendation yes, I think that would be convenient.

23         THE COURT: Mr. Mitchell, while I have you here,
24 refresh my recollection on this point.  This is a case in
25 which we had -- I'm not going to call it -- I'm going to use

1   the wrong term here but I'm going to call it an internal

2   investigation report that was prepared by the state and there

3   was a question of whether or not it should be given to the

4   plaintiff at different times.  It was draft form, it was

5   final.  Is this that case?

6           MR. MITCHELL: Yes, Judge.  There was -- that is the

7   case.  It's not an internal report.  It's an external report

8   by the state, by the State Commission of Corrections.  That is

9   this case and they did issue that report.

10          THE COURT: Did that report recommend other actions

11  that should be taken in connection with this matter?

12          MR. MITCHELL: Not so much with this matter but in

13  general they had criticisms of certain things.

14          THE COURT: Okay.

15          MR. MITCHELL: Which we disagreed with.

16          THE COURT: Was there an -- was there an internal

17  affairs report as well?

18          MR. MITCHELL: There was.

19          THE COURT: Did that find fault or responsibility or

20  raise questions or -- I just want -- are there other

21  proceedings going on that are parallel to this?

22          MR. MITCHELL: Not any more.  There was an internal

23  affairs investigation by the Suffolk Police Department.

24          THE COURT: Right.

25          MR. MITCHELL: Some of the internal affairs findings

were consistent with or adopted some of the findings from the state.  I was in an unusual position that I quite frankly disagreed with those determinations by the internal affairs department.

THE COURT: Can you -- do you care to show us in what manner?

MR. MITCHELL: The determinations they came to were reached without speaking to the individual police officers involved.  I think there were assumptions made that I disagree with.

THE COURT: Okay.

MR. MITCHELL: In addition to some of the adoptions that internal affairs made or acceptance of parts of the state report.  Similarly, I disagree with the findings of the state report again based on some facts that I knew that I believe the state got wrong.  Our internal affairs adopted those and again my position was you shouldn't be adopting their findings because their findings were based on a faulty foundation.

THE COURT: Were there any administrative or personnel actions that grew out of any of that?

MR. MITCHELL: No, Judge, not in this case, no.

MR. OBIOL:  Judge, if I could comment on that.  The internal affairs investigation wasn't commenced in earnest until after the 18 month period that made the offices under investigation immune from administrative action after that

1  passage of time.  Part -- if the court will recall that the

2  internal affairs report was finally turned over literally on

3  the eve of trial of the matter and we took late depositions of

4  two -- a sergeant, a captain and an inspector of the internal

5  affairs unit and Inspector Cartarelli [Ph.] made findings

6  overruling his own detective sergeant based not only on the

7  internal -- I'm sorry, on the state commissioner report but on

8  his review of the testimony of those officers in this case.

9          And going back to the settlement, what brings us

10  here today, Judge Kuntz by order has already approved the

11  global settlement in the case but the compromise order was

12  required and Mrs. McDonnell is already in light of Judge

13  Kuntz's order which was sealed approving the settlement we

14  have no problem exchanging that release with the County today

15  so they can do a full submission to you.

16          THE COURT: I'm not -- all right.  I'm not sure I

17  followed the last thing you said.

18          MR. CIVARDI: We could either hold a release until

19  their documents are ready.  The process has been going on now

20  for some period of time since the end of the case or we could

21  tender the release signed today and counsel can hold it in

22  escrow until the other documents are ready to submit to the

23  court or pending further direction from Judge Kuntz.

24          THE COURT: Mr. Mitchell, do you agree with the

25  assertion that the -- that after 18 months no action could be

taken against any officer?

MR. MITCHELL: It's a statutory provision, Judge, that within the police department action has to be taken within -- it's a statute of limitations essentially and that certain action has to be taken within that period f time.  If not internal affairs can issue a report but they may not be able to proceed with what we call specifications and charges.

THE COURT: So, Mr. Mitchell, just understand my role here is limited to determining whether or not the settlement is sort of a) properly calculated, let's call it that, right, in terms of how it's divided, and if it's fair overall -- and part of that is sort of evaluating the risks and likely benefits of continued litigation and so forth.  So it does involve kind of digging a little bit into the substance of what happened which is why I'm asking some of these questions about what happened.

MR. MITCHELL: Judge, if I could just say it this way.  I made an application, a motion in limine to the District Judge to exclude the report from the state and to exclude the admission of the report from the Internal Affairs Bureau.  Had Judge Kuntz granted my motion I think we would have been a very -- had a very different type of case and we would be in a much stronger position.  He did not grant my motion.  He permitted -- his ruling was that those two reports would be admissible and the jury would be able to see them and

1  counsel I believe intended on calling if not Inspector

2  Cartarelli, someone from the internal affairs section and so

3  it resulted in us having to reevaluate the strength of our

4  case and obviously the risks before a jury.

5        THE COURT: I guess one of my concerns, Mr. Mitchell,

6  just to sort of put it out there, again it's somewhat

7  tangential although not entirely tangential to what I'm

8  charged to do.  I presume with all of this discussion that

9  there was an earlier internal affairs report that would have

10 been I guess termed an exoneration of sorts.

11       MR. MITCHELL: It wasn't completed, Judge.  I

12 understand what -- the way the process works is an

13 investigator with the Internal Affairs Bureau and it's either

14 a sergeant sometimes or a lieutenant will conduct an

15 investigation and come to conclusions.  That was done but

16 it's -- that is then reviewed by usually a captain or

17 inspector who may say go back and reinvestigate or I don't

18 agree with this finding or I don't agree with that finding.

19       That initial report was concluded before the New

20 York State Commission on Corrections report was officially

21 completed.  When the New York State Corrections completed

22 their report as -- and Your Honor may remember this.  Their

23 draft report is provided to the police department to give "the

24 police department an opportunity to respond and make

25 recommendations to the state commission about -- " in essence,

1   to either challenge certain things or add things and at that

2   point the Suffolk Police Department now had the draft report

3   of the state report and their potential findings and based on

4   our experience we have found that most of the time even though

5   the draft report is provided to the police department and I

6   ask for recommendations that although we may give

7   recommendations or disagree with certain things that the final

8   report is usually relatively consistent with the draft report.

9           So at that point internal affairs had the state

10  report, reviewed it.  Some of the things in the state

11  report -- there were some statements from some witnesses that

12  the state report included that internal affairs didn't have.

13  So there's additional things in there and they reviewed it and

14  persons at the internal affairs department agreed with some of

15  the findings in the state report.  I disagreed with them but

16  we're two different entities.

17          THE COURT: I hear you.  I guess the sort of the

18  gorilla in the room as such, the thing that's sort of -- I'm

19  just trying to think through.  If the sequence looks like

20  this, there's a report issued of some nature within the 18

21  month time period when you have opportunity to do something,

22  right, and that doesn't really scream out for action however

23  it's phrased.  It's not something that causes anything else to

24  happen.  The 18 month period expires.  Then there's a state

25  report and then obviously there's a subsequent report that's

1   leading you to pay two and a quarter million dollars.

2          MR. MITCHELL: Judge, I appreciate what you're

3   perceiving and --

4          THE COURT: You see what I'm grappling with?

5          MR. MITCHELL: Yes.  And there's a distinction

6   between what internal affairs determined regarding conduct

7   having to do with rules and procedures violations and those

8   things that have to do with the content of this case which is

9   whether a person's constitutional rights were violated, and

10  the -- what the findings by the Internal Affairs Bureau was

11  more consistent with the form of things that internal -- that

12  the initial review of the case found that there was either

13  what we call unfounded determination, meaning it can't be

14  determined one way or the other, or unsubstantiated

15  determinations, they have terms of art, regarding for example

16  the conduct of the sergeant on the first day when Mr.

17  McDonnell came to the police department and there was this

18  issue of medication being brought and whether he should have

19  been dispensed the medication or whether he should have been

20  brought to the hospital.

21         Initially the finding from the initial in

22  investigation was that the sergeant hadn't violated any rule

23  and procedure.  Upon review of that the commanding officer,

24  the inspector found that he looked at the rule and procedure,

25  looked at the same rule and procedure and interpreted it and

he said no, I think that the sergeant did violate it.  And so
it was more things like that that there were certain types of
determinations --

        THE COURT: Weren't there use of force findings
somewhere along the way that --

        MR. MITCHELL: No.

        THE COURT: No place?

        MR. MITCHELL: There was not.

        THE COURT: Anything you want to add to that,
Counselor?

        MR. CIVARDI: My memory of the sequence is a little
bit different.  The Detective Sergeant Love and another
officer of internal affairs were tasked and sent to the
precinct on the day of the events that unfolded the day that
Daniel McDonnell died in the precinct.  They had access to
investigative materials throughout.  Detective Love late --
some two years go by at least before he writes his initial
report and it goes up to the chain of command to Inspector
Cartarelli.

        At the time that he wrote his report my memory is is
that the state commission report was already final.  Inspector
Cartarelli to his credit testified at length and candidly with
respect to his findings and recommendations and basically he
sent the report back with a to-do list for the detective
sergeant to complete things he felt were not in the report and

1   then at that point they -- and Detective Sergeant Love is an

2   attorney as well.  Inspector Cartarelli then looked at the

3   report and took issue and basically reversed the findings of

4   his detective sergeant and found multiple procedural

5   violations as against Sergeant Pappillo and that was the

6   sergeant on the first day.  Daniel was in custody, failed to

7   give his meds or inquire about his meds.  He found several

8   procedural violations and determined that Daniel should have

9   immediately been taken to the hospital upon even requesting

10   the meds whether they could be administered or not.

11         Secondly, the inspector -- Inspector Cartarelli made

12   specific and multiple findings as against Lieutenant Scrima

13   with regard to his supervision of the officers and sergeants

14   on the days in question.  So it was a very extensive finding.

15   It wasn't tied in many respects at all nor was it bound by the

16   state commissioner report that made other and quite different

17   recommendations that have not been acted upon to this day.

18         THE COURT: Like what?

19         MR. CIVARDI: Like a referral to the State Attorney

20   General's Office for a criminal investigation.

21         THE COURT: So did the state report as you have been

22   referring to it contain use of force findings in your opinion?

23         MR. CIVARDI: I'm sorry, sir.

24         THE COURT: Did it contain use of force type

25   findings?

1          MR. CIVARDI: Did the state report have findings?

2          THE COURT: About the use of force.

3          MR. CIVARDI: No, but they -- well, yes, they found -

4  - they made findings with regard to the force but also based

5  on their findings made a referral for further investigation.

6          Just so the record is clear, the internal affairs

7  investigating detective sergeant as well as the inspector

8  never addressed the issue of excessive force or made any

9  findings in that regard.

10          THE COURT: All right.  Anything else anybody would

11  like to add?

12          MR. MITCHELL: Judge, only -- and this is not

13  necessarily in response to Mr. Civardi but just in response to

14  what the state determined and things that they did.  Among --

15  the state in additional in their report made recommendations

16  to the Medical Examiner's Office of Suffolk County which they

17  don't have the authority to do.  They made recommendations to

18  the District Attorney of Suffolk County which they don't have

19  the authority to do.  It was my -- and quite frankly it's my

20  position that the state commission report, a great deal of it

21  is self serving and I believe in many instances because we've

22  had reports like this -- we've had state reports and after

23  reviewing them we think they're done in a manner that's not as

24  thorough as they should be.

25          So we had disagreements with the report itself

1   sometimes based on the way they did the report and based on

2   quite frankly the -- for example, this referral to the

3   Attorney General's Office.  The state commission does not have

4   the authority to make such a referral.  It's self serving on

5   their part to do that.  So as far as the significance of it it

6   quite frankly has none because they don't have the authority.

7           I'm not responding to Mr. Civardi as much as I am to

8   that -- what these things in the report, either findings that

9   they don't the authority to make or recommendations that they

10  don't have the authority to make.  So I'm just pointing that

11  out to the court as to how we evaluated the report.

12          THE COURT: I understand.  Mr. Mitchell, I'll point

13  out to you that I recognize the limited scope of the review

14  that I'm to conduct here lest you one day so well, gee that

15  judge is making recommendations that he has no authority to

16  make but these things are sometimes a little more complicated.

17  So I just want to make sure I understand the lay of the land.

18          Is there any reason for me to review the trial

19  transcript?

20          MR. MITCHELL: I don't think so, Judge.  We had a

21  solid day of testimony and we obviously did openings but I

22  don't believe so.  I mean as far as what -- what we got up to

23  sort of -- it was chronological in nature.  The first witness

24  was the sergeant who was on -- who first encountered Mr.

25  McDonnell on that Friday and I don't believe we -- we kind of

1 went through that and then never really got too much further

2 into the actual facts of the case after that.

3         THE COURT: Do you agree?

4         MR. CIVARDI: Your question was --

5         THE COURT: Is there any reason for me to review the

6 trial transcript.

7         MR. CIVARDI: I don't think it's necessary.  I think

8 we've provided a summation of it for you in our comments.

9         THE COURT: Okay.  All right.

10         MR. MITCHELL: Judge, I'm sorry, just one more point.

11         THE COURT: Yes, please.

12         MR. MITCHELL: Unrelated to what we've just spoken

13 about.

14         THE COURT: I'm not rushing anyone.

15         MR. MITCHELL: Okay.  In the plaintiff's motion to

16 the court they had an exhibit that we're not asking to see.

17 It's Exhibit D.  It was their expenses.  We're just seeking to

18 make sure that the court received that Exhibit D.

19         THE COURT: Let me make sure I have it.  I believe I

20 do.  Indeed I do and I'm not sure I know why the County

21 couldn't see this but --

22         MR. CIVARDI: Judge, in general these proceedings are

23 usually ex parte and we --

24         THE COURT: For example, if -- just by way of example

25 because I'll use something innocuous, right, oh, we paid for

1 the deposition transcript that happened on May 4th.  They

2 looked at it, there was no deposition on May 4th.  I mean there

3 might be some relevance in that regard.

4          MR. CIVARDI: It could be, Judge.

5          THE COURT: I'm not suggesting that that happened.

6 I'm just giving an innocuous example.

7          MR. CIVARDI: We've never shared them with any

8 defendants before and quite frankly at the time of the filing

9 of these papers we exchanged them beforehand with the County

10 to see if they even wanted to participate in the hearing and

11 then they asked for notice and we told them that we would be

12 withholding that document especially in light of the fact that

13 we have a date in January should for whatever reason this

14 settlement failed we were to go back and resume trial in front

15 of Judge Kuntz.

16          And we've been working very hard and the County has

17 been working very hard to especially over the last two weeks

18 to iron out what is necessary for the municipality's purposes

19 for their documents and what's necessary for Prudential for

20 what they require in order to make a structured settlement.

21 But at various times it did appear that perhaps the settlement

22 would not come to fruition and we would be back in front of

23 the court.  This is -- these are things we kind of like to

24 keep confidential because it's sort of our recipe for trial in

25 there.  Can be gleamed from there.  There's different things

1  that we spend money on, different things that we do, and

2  there's really no reason for them to know about it.

3      THE COURT: I think that's -- I mean there are some

4  parts of it that I would say sort of fall into the work

5  product type area in the sense of what particular vendors you

6  might use for certain purposes and so forth.  So I get that.

7      You want to add something?

8      MS. BIZZARRO:  Yes.  I just wanted to make it clear

9  for the record.  We don't need the copies.  We just wanted to

10  make sure that the court had them and that's fine.

11      THE COURT:  No, I have it.  In fact, when I said

12  earlier that I first raised an eyebrow about the number of

13  disbursements I then thought about where we were but I also

14  reviewed this and I will say a member of my staff actually did

15  the math and added it up.  So I'm grateful for that.  I think

16  we're okay on that piece.  I think that's --

17      MR. CIVARDI: Judge, again, as I indicated earlier in

18  the record I've gone through those disbursements line by line,

19  item by item with Danielle McDonnell and she's approved each

20  of them.

21      THE COURT: Okay.  Good.  And the one thing I did

22  note was that you were going to have the entire amount of the

23  settlement attributed to pain and suffering and I don't have a

24  principle reason to object to that.  I do of course recognize

25  it has other implications.  Is there any reason why you

1   disagree with that, Mr. Mitchell?

2          MR. MITCHELL: Judge, we would take no -- we take no

3   position on it.

4          THE COURT: Okay.  There was nothing in here that

5   would inherently jump out as sort of lost wages because I

6   think the employment situation was sort of marginal.  Is that

7   fair to say?  So I don't see a problem with that.  I don't

8   know that my signing it necessarily means that taxing

9   authorities are going to agree but I don't see a reason to

10  attribute it to anything else.

11         Interestingly, if it was attributed to punitives I'm

12  not sure if that would have a different -- if that would have

13  a different outcome.  I honestly don't know the answer but

14  given this circumstance I don't see that as unreasonable.

15         Anything else we should cover today, Counsel?

16         MR. MITCHELL: No, Your Honor.

17         MR. CIVARDI: No, thank you, Judge.

18         THE COURT: Thank you all.  We're adjourned.  I will

19  get to this as soon as practical.  If you would like to get

20  that 6N order to me.

21         MR. MITCHELL: Yes, I'll take a look at that.

22         THE COURT: I'm happy to make it part of the

23  recommendation if it might be helpful.

24         MR. MITCHELL: Yes, Your Honor.  Thank you.

25  (Proceedings concluded at 2:48 p.m.)

* * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

_____

Shari Riemer, CET-805

Dated:  October 30, 2014